# THE STATE OF WISCONSIN,

*vs.*

## BARTLETT MORTON.

REPORT FROM CIRCUIT COURT, JEFFERSON COUNTY.

On an indictment for offering to pass counterfeit bank bills, the guilty knowl-
edge of the defendant is a material fact, and it is incumbent on the prose-
cution to prove it.

Where evidence of the *scienter* has been given by the State, it is competent for
the defendant to rebut it. This he could do by facts and circumstances
tending to show that he supposed the bill was genuine ; that it was so in
fact, or that he resorted to the ordinary and approved sources of informa-
tion to ascertain its character, as that he examined the " Counterfeit De-
tector," to ascertain whether it was good or bad.

It is not necessary to aver or prove an intent to injure or defraud any particu-
lar individual ; but the guilty knowledge that the bill is counterfeit, consti-
tutes the offence.

Under our statute it is necessary to establish by proof the fact that the bank
whose bill it is alleged in the indictment was counterfeited, existed, and was
authorized to issue bills, &c., as averred.

This case comes up on the report of the judge of the cir-
cuit court of Jefferson county.

The indictment charged that " Bartlett Morton late &c., on
&c., at &c. ; feloniously and unlawfully did have in his pos-
session, with an intention to utter and give in payment as
true, one certain false, forged and counterfeit bank bill, which
said bank bill was made in imitation of, and did then and
there purport to be a bank bill for the sum of ten dollars, is-
sued by a certain corporation or company, called the Agricul-
tural Bank, duly authorized for that purpose, by the laws of
the State of Massachusetts, one of the United States of Amer-
ica, made payable to the bearer on demand, numered 3,060,

and dated at Pittsfield, the 18th day of November, A. D. 1855, (the figures were written out in words,) with the name of G. W. Campbell thereto subscribed as President of said bank, and the name of J. R. Warriner countersigned thereon as Cashier of said bank, and was in words and figures following : (setting out a copy of the bill) then and there well knowing the said bank bill to be false, forged and counterfeit as aforesaid against the peace, &c.

The defendant was convicted.

On the trial several questions arose which the circuit judge deemed of sufficient importance to require the advice and opinion of this court, and accordingly reported the same for that purpose. The report of the judge is as follows :

" The defendant in this action was placed upon trial upon the foregoing indictment.

" It was shown upon the trial that defendant was in possession of the ten dollar bill on the day of his arrest, being the time set forth in the indictment; that he offered it on the same evening, at two different saloons, at one in payment for five cents worth of tobacco, and at the other for two glasses of beer. It was also shown that defendant came by the bill described in the indictment in the following manner : Defendant just before sunset on the same day, went with a companion into the store of one Newman, and bought some clothing, for which he gave in payment a ten dollar bill, which Newman examined closely, went out and made inquiries, and returned and pronounced the bill good and gave defendant his change. Newman giving as a reason to defendant for being so careful, to ascertain as to whether said last named bill was genuine before taking it, that he then had a counterfeit ten dollar bill in his store which he had taken for goods in the course of his business, and had had it about two years. Defendant asked to see it. Newman showed it to him. Defendant called for a detector. Newman gave him his Coun-

terfeit Bank Note Detector, being the one kept in the store for daily use, and bearing date about a month previous. Defendant and his companion then looked over the detector and pronounced the bill good, and defendant told Newman the bill would be worth two shillings to him. Newman suffered defendant to keep the bill and accepted the two shillings. There was one witness on the part of the State sworn to prove the character of the bill, and only one, and he testified that the bill was forged and a counterfeit; he also testified that he had been employed in a bank, handling money for five years, that he was now Vice President of the Jefferson County Bank. On his cross-examination he gave as his reason for saying that it was a counterfeit bill, that the engraving was coarse and bad—that he thought the vignette differed from that of genuine bills, though he could not tell in what respects. He thought the signatures of the President and Cashier were not genuine, thought they differed from those he had seen on other bills of that bank, and from those in an autograph book kept in the Jefferson County Bank, though he had never compared them and could not tell in what respects such signatures differed, if any. He also testified that he did not know said President or Cashier, and had never seen either of them write, and had no knowledge of the handwriting of either of them, except that derived from having seen their names on other bills of that bank and in the said autograph book. He also testified that he and other banking men were accustomed to refer to Counterfeit Bank Note Detectors to aid in ascertaining whether bank bills were genuine or counterfeit.

"The defendant called Charles Morehouse, and offered to prove by him that the detector which defendant examined at Newman's store had since been lost. That he, witness, had examined it soon after defendants' arrest to ascertain the character of the bill described in the indictment, and that

such detector mentioned no counterfeit tens on the said Agricultural Bank, and that for aught that appeared in such detector the said bill was genuine; all of which evidence, on objection, was ruled out by the court, and to which ruling the defendants' counsel *excepted.*

"The court charged the jury that it made no difference whether the defendant intended to injure or defraud or not— that the offence in this indictment was complete, if the jury should find that the defendant had the counterfeit bill in his possession, with intent to utter the same as true, and that the words of the statute, "with intent to utter as true," must be understood as intent to pass and put the bill in circulation, and have the same circulated as a true or genuine bill, to which instruction the counsel for the defendant duly *excepted.*

"The court further instructed the jury that it was immaterial whether there was or was not such a bank in existence as the Agricultural Bank. To which charge defendants' counsel duly *excepted.*

"The court also charged the jury, that it was not necessary for the State to prove that any such bank as the Agricultural Bank was authorized by the laws of the State of Massachusetts to issue bank bills, to which charge, defendants' counsel duly *excepted.*

"The jury having retired and considered the case, returned with a verdict of guilty, against the defendant.

"And because the questions of law arising in this case are so important and doubtful, in the opinion of the judge of this court, as to require the decision of the Supreme Court, and the defendant having desired it, the said judge has made this report to the Supreme Court, for their decision thereon, pursuant to the statute in such case made and provided the 29th day of October, 1858."

State of Wisconsin vs. Morton.

*G. Bouck,* Attorney General, for the State.

It was not necessary for the State to prove such corporation as the Agricultural Bank in existence. *People vs. Smith Davis,* 21 Wend., 309; R. S., p. 950, § 5; *People vs. Peabody,* 25 Wend, 472; 2 N. Y. R. S., p. 761, § 31.

As to intent. *State vs. Rees,* 5 O. R., 6.

*E. R. Gill,* for the defendant.

This case is certified to this court for opinion, by the circuit court for Jefferson county, and arose on a motion by the defendant for a new trial, after conviction, upon an indictment for passing counterfeit bank bills, under § 5, ch. 135, R. S. 1849. The points made are as follows:

1. The court erred in rejecting evidence of the loss of the detector, and that it described no such counterfeit as the one mentioned in the indictment.

2. That in charging the jury that no evidence or proof of the legal existence of the bank, by which the counterfeited bill purported to have been issued need be given, if the counterfeit purported on its face to be issued by a bank or authorized company, the court erred.

3. For misdirection of the court in charging the jury that it was not necessary in order to a conviction, that there should have been any intent on the part of the defendant to defraud.

*By the Court,* SMITH, J. The guilty knowledge of the defendant was a material fact, and it was incumbent on the prosecution to prove it. Evidence to show the *scienter* was given by the state. But it was also competent for the defendant to rebut it. This he could do by proof of such facts and circumstances as would tend to show that he supposed the bill to be genuine, or that it was so in fact; that he resorted to the ordinary and approved sources of information to ascer-

State of Wisconsin vs. Morton.

tain its character. Hence we think the evidence of Morehouse to the effect that the defendant examined the " Counterfeit Detector" to ascertain whether the bill, &c., was good or bad, ought to have been admitted. It was a circumstance slight or strong according to other circumstances with which it was connected.

The first point of the charge was liable to mislead the jury. The offence is not complete without the guilty knowledge of defendant. It was not necessary to aver or prove an intent to injure or defraud any particular individual, but the defendant must know the bill was counterfeit.

It is also necessary under our statute to establish by proof the fact that the bank alleged in the indictment existed, and was authorized, &c., as averred.

NOTE.—The above is but a mere statement of the points decided by the court. No opinion was ever written in the case.—REPORTER.